UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

STEVEN A. WILLIAMS,

                    Plaintiff,                14 Civ. 4390 (JGK)

      - against -             OPINION AND ORDER

ROSENBLATT SECURITIES INC., ET AL.,

                    Defendants.
————————————————————————————

JOHN G. KOELTL, District Judge:

    The plaintiff, Steven Williams, was employed by the defendant, Rosenblatt Securities Inc. ("RSI") for less than a year in 2012. He claims primarily that he was terminated in retaliation for his activities as a whistleblower for the Securities Exchange Commission ("SEC" or "Commission") and that he was the victim of employment discrimination based on a perception that he was mentally ill. While he was a strategist at RSI, the plaintiff published a research report that purportedly implicated defendant Jane St. Capital ("Jane St.") in violations of securities laws. RSI did substantial business with Jane St. The plaintiff claims that he was harassed and eventually discharged from RSI because of the report. In the course of the alleged harassment, he was perceived by RSI and others in the financial industry as having a mental illness. RSI required him to undergo medical examinations by defendant Dr. Loraine Henricks ("Dr. Henricks") as a condition of continued

1

employment. The plaintiff received treatment from Dr. Henricks, but refused to take anti-psychotic medication. After being terminated, the plaintiff's prospect of employment was allegedly affected by rumors spread by employees of Jane St. and defendant Integral Derivatives ("Integral") regarding his perceived mental illness.

The plaintiff brought the current lawsuit on June 14, 2014 and filed his fourth amended complaint ("FAC") on April 8, 2015, making nine distinct claims against RSI and several RSI employees[1] (collectively "RSI Defendants"), Jane St., Integral, and Dr. Henricks. On April 24, 2015, the RSI Defendants, Jane St., Integral, and Dr. Henricks each filed a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all claims against them.

After the defendants filed their motions to dismiss, the plaintiff filed, in chronological order, a motion to strike parts of the RSI Defendants' motion to dismiss, a motion for partial summary judgment, a motion for partial judgment on the pleadings, a motion to strike various affirmative defenses by Dr. Henricks, and a motion for a conference to file a fifth amended complaint. Most recently the plaintiff brought an order to show cause for a temporary restraining order and a

---

[1] The named RSI employees include Richard Rosenblatt, Joseph Gawronski, Gordon Charlop, Charles Roney, Justin Schack, Joseph Benanti, Scott Burrill, Gary Wishnow, and Alex Kemmsies.

preliminary injunction. These motions and applications will be discussed in turn.

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.; see also A'Gard v. Perez, 919 F. Supp. 2d 394, 398-99 (S.D.N.Y. 2013).

3

Where a pro se litigant is involved, the same standards for dismissal apply. However, when deciding a motion to dismiss, the Court may consider allegations that are contained in a pro se plaintiff's opposition papers. See Burgess v. Goord, No. 98cv2077 (SAS), 1999 WL 33458, at *1 (S.D.N.Y. Jan. 26, 1999) (collecting cases). Moreover, a "'court should give the pro se litigant special latitude in responding to a motion to dismiss.'" Gaston v. Gavin, No. 97cv1645 (JGK), 1998 WL 7217, at *1 (S.D.N.Y. Jan. 8, 1998), aff'd, 172 F.3d 37 (2d Cir. 1998) (quoting Adams v. Chief of Sec. Operations, 966 F. Supp. 210, 211 (S.D.N.Y. 1997)); Andujar v. McClellan, No. 95cv3059 (JGK), 1996 WL 601522, at *1 (S.D.N.Y. Oct. 21, 1996); see also Kaplan v. New York State Dep't of Corr. Servs., No. 99cv5856 (JGK), 2000 WL 959728, at *1 (S.D.N.Y. July 10, 2000).

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also A'Gard, 919 F. Supp. 2d at 399.

4

II.

The following facts are alleged by the plaintiff. On January 15, 2012, the plaintiff started working at RSI as the Chief Derivatives and ETP (Exchange Traded Products) Strategist. On April 13, 2012, the plaintiff published a report which explored how Credit Suisse allegedly colluded with high frequency trading ("HFT") firms in the securities lending market to manipulate the market price for TVIX (Velocity Shares 2x Volatility ETN), an exchange-traded note managed by Credit Suisse. While the report stated that "no securities laws were broken," it nevertheless suggested that there were violations of section 10(b) of the Securities Exchange Act of 1934 and of SEC Rule 10b-5. (FAC ¶¶ 1-5 at 1-2[2]; Pl's Opp'n at 5-7.) A copy of the report was forwarded to the SEC. (FAC ¶ 17.) Shortly after it was published, two SEC staff members not on the report's distribution list requested permission to see the report. (Id. ¶ 19.) On April 16, 2012, the SEC opened an investigation into Credit Suisse and several HFTs with regard to the alleged collusion. (Id.)

---

[2] The first two pages of the FAC contained five consecutively numbered paragraphs, but starting on the third page the FAC numbered the paragraphs with a new list. The FAC is not paginated. In order to avoid confusion, the first five paragraphs will be cited with page references. Paragraphs starting from page 3 will be cited by the paragraph number without page references.

On April 16, 2012, Richard Rosenblatt ("Rosenblatt"), the
CEO of RSI, called the plaintiff into his office, and warned him
that "it was not [their] job to police the market." (Id. ¶ 20.)
Employees from Credit Suisse and other financial firms
subsequently phoned RSI and the plaintiff to express their
concern over the report. (Id. ¶¶ 21-23.) Within the next month,
the plaintiff was pulled from important projects, and several
members of RSI's management team stopped interacting with the
plaintiff. (Id. ¶¶ 24, 25, 28.)

Jane St. is an HFT firm, and RSI allegedly derives eighty
percent of its revenues facilitating high frequency trading for
Jane St. (Id. ¶¶ 18, 100.) On May 16, 2012, two RSI partners,
Joseph Gawronski ("Gawronski") and Scott Burrill ("Burrill"),
contacted the plaintiff inquiring whether Jane St. was involved
in a trade similar to that discussed in the plaintiff's report.
(Id. ¶ 30.) The plaintiff responded that it was very likely but
there was no way to be certain. (Id.) Later that month, Jane St.
traders Dan Macklowitz ("Macklowitz") and Hector Guardinez
("Guardinez") exchanged emails and met with RSI officer Gary
Wishnow ("Wishnow"). (Id. ¶¶ 31, 111.)

According to the plaintiff, soon after the email exchange
and the meeting, Jane St. and the RSI Defendants conspired to
retaliate against him for writing the report that may have
implicated Jane St. (Id. ¶ 111.) The plaintiff was moved from

the trading floor, away from his colleagues, and into an office of his own. (Id. ¶ 33.) In the next few months, the plaintiff alleges, the RSI Defendants engaged in a concerted campaign of harassment identified by the plaintiff as "gaslighting"[3] with the purpose of inducing the deterioration of the plaintiff's mental state. (Id. ¶ 3.) Wishnow, the plaintiff's immediate supervisor, allegedly sabotaged the data program used by the plaintiff, and as a result, the plaintiff had to "work unreasonable hours to produce less than exceptional work." (Id. ¶¶ 34, 36.) After the plaintiff's constant complaints, Gawronski, the COO of RSI, assigned Alex Kemmsies ("Kemmsies") as a support person to the plaintiff and had the plaintiff report directly to Gawronski instead of Wishnow. (Id. ¶¶ 38-41.) From July to September of 2012, Kemmsies repeatedly sent the plaintiff erroneous data with significant delays. (Id. ¶ 47.) Both Kemmsies and Gawronski repeatedly changed the content of draft reports submitted by the plaintiff despite the plaintiff's persistent objections. (Id.)

Starting from June 2012, the plaintiff's mental condition caught the attention of RSI's management. In June 2012, Rosenblatt gave the plaintiff a book on Attention Deficit

---

[3] The plaintiff describes gaslighting as an effort "to induce a severe sense of anxiety into the target and to cause others to regard him as mentally unstable" by completely "annihilate[ing]" the target's reputation and causing the target "personal disasters such as job loss, divorce, financial devastation – even jail." (FAC ¶ 3.)

Disorder (ADD) after commenting that the plaintiff's report "looks like somebody with ADD wrote it." (Id. ¶ 35.) Around early July 2012, Rosenblatt required the plaintiff, as a condition of his continued employment, to be treated by Dr. Henricks, a psychiatrist and friend of Rosenblatt. (Id. ¶ 42.)

The plaintiff alleges that during the course of treatment, Dr. Henricks tried to convince the plaintiff that he was mentally unstable, overprescribed medications, engaged in aggressive therapy for the plaintiff that triggered his trauma, shared the plaintiff's privileged information without his consent, and eventually abandoned the plaintiff after his employment was terminated. The plaintiff contends that although Dr. Henricks prescribed anti-psychotic medicine for him, he eventually did not take the medicine. (Id. ¶¶ 60-70, 114.)

On or about September 24, 2012, the plaintiff attended a psychiatric session with Dr. Henricks.  Rosenblatt also attended the session after the plaintiff invited him, although the invitation was allegedly sarcastic. (Id. ¶¶ 48-51.) After the plaintiff refused to take anti-psychotic medication despite the pleas of Dr. Henricks and Rosenblatt, the plaintiff was terminated from RSI. (Id. ¶ 51.)

After he was terminated, the plaintiff requested access to his stored emails. RSI agreed to grant access, but withheld the emails for several weeks, allegedly tampered with the contents,

8

and created technical obstacles for access to the attachments of the emails. The plaintiff later "had the emails forensically analyzed" and was able to open the attachments. (<u>Id.</u> ¶ 54.)

In July 2013, the plaintiff was hired by Kirk Katsberg ("Katsberg") as a wire clerk. (<u>Id.</u> ¶ 77.) Initially Katsberg offered the plaintiff $7,000 per-month in a "draw versus commissions." (<u>Id.</u>) Katsberg later mentioned this hiring arrangement to Ben Phillips ("Phillips"), a trader at Integral Derivatives ("Integral"). (<u>Id.</u> ¶ 83.) Phillips told Katsberg that "I wouldn't hire Steve if I were you; he's got problems." (<u>Id.</u>) When reminded there might be another side to the story, Phillips replied: "The first side is so crazy that I don't want to hear the second." (<u>Id.</u> ¶ 84.) Katsberg subsequently dropped his offer of the $7,000 draw to straight commissions. (<u>Id.</u> ¶ 85.)

When the plaintiff showed up to work at the New York Stock Exchange ("NYSE"), he was stopped at the entrance and told that he was banned from the NYSE. (<u>Id.</u> ¶ 78.) Although this ban was lifted after the plaintiff met with the head of security of the NYSE, he was nevertheless stopped by security personnel several times afterwards and permitted entrance only after receiving clearance from RSI. (<u>Id.</u> ¶¶ 78-81.) The plaintiff stopped going to work after being stopped by NYSE security for the fourth time. (<u>Id.</u> ¶ 87.)

In October 2013, the plaintiff was hired by Kamran Gille as
an off-floor equity options broker and was offered $5,000 per
month draw against commission. (Id. ¶ 93.) Karman Gille
retracted the offer two days later, and he told the plaintiff
that two Jane St. employees, Dan Macklowitz and Hector
Guardinez, were "crushing" the plaintiff and that, because Jane
St. was ruining the plaintiff's reputation, he would be better
off to consider employment outside New York. (Id. ¶ 95, 97.)
David Lucerne from Morgan Stanley also told the plaintiff that
Jane St. was "shitting all over his name." (Id. ¶ 96.)

The plaintiff brought a lawsuit on June 14, 2014, and he
filed an amended complaint on June 18, 2014. On December 5,
2014, with the Court's permission, the plaintiff filed a second
amended complaint ("SAC"). In February 2015, several defendants
named in the second amended complaint filed motions to dismiss
various claims contained in the SAC. Without seeking leave, the
plaintiff filed a third amended complaint on February 27, 2015.
On March 24, 2015, the Court held a conference and granted the
plaintiff leave to amend the complaint yet again, but only to
add the individual RSI employee defendants whom the plaintiff
claimed to have inadvertently dropped in the process of amending
the pleadings. (ECF No. 101). The Court explicitly ordered that
those would be the only changes permitted and no further
pleadings were allowed without express permission of the Court.

10

(Id.) The plaintiff's fourth amended complaint was due on April 6, 2015.

The plaintiff filed his fourth amended complaint on April 8, 2015, making nine distinct claims against the RSI Defendants, Jane St., Integral, and Dr. Henricks. More specifically, the plaintiff alleges the following causes of action: (1) violations of the Anti-Retaliation provisions of the Dodd-Frank Act, 15 U.S.C. § 78u-6(h)(1)(c), against the RSI Defendants; (2) violations of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, against RSI; (3) violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, against RSI; (4) violations of the New York Human Rights Law ("NYHRL"), N.Y. Exec. L. § 292(21)(c), against RSI; (5) violations of the ADA, 42 U.S.C. § 12102(2)(c), against Jane St. and Integral; (6) violations of the NYHRL, N.Y. Exec. L. § 292(21)(c), against Jane St. and Integral; (7) violations of 42 U.S.C. § 1985(3) against the RSI Defendants, Jane St., and Integral; (8) violations of 42 U.S.C. § 1986 against the RSI Defendants, Jane St., Integral, and Dr. Henricks; (9) medical malpractice against Dr. Henricks. On April 24, 2015, the RSI Defendants, Jane St., Integral, and Dr. Henricks each filed motions to dismiss all claims against them pursuant to Rule 12(b)(6). The plaintiff's motions followed.

11

III.

A. RSI Defendants

The plaintiff alleges six claims against the RSI Defendants for their violations of: 1) the Dodd-Frank Anti-Retaliation provisions; 2) The SCA; 3) Title I of the ADA; 4) 42 U.S.C. §1985(3); 5) 42 U.S.C. §1986; and 6) the NYHRL. The RSI Defendants move to dismiss all the claims. For reasons explained below, **their motion is granted in part and denied in part**.

1. Dodd-Frank Anti-Retaliation Provisions

The Dodd-Frank statute added to the Exchange Act a section 21F, titled "Securities Whistleblower Incentives and Protection." 15 U.S.C. § 78u-6. Subsection 21F(h) prohibits employers from retaliating against employees for reporting certain violations. That subsection provides:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
> (i) in providing information to the Commission in accordance with this section;
> (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information, or
> (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-1 (m) of

12

> this title, section 1513 (e) of title 18,
> and any other law, rule, or regulation
> subject to the jurisdiction of the
> Commission.

15 U.S.C. § 78u-6(h)(1)(A).

The statute defines "whistleblower" as "any individual who provides . . . information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission." 15 U.S.C. § 78u-6(a)(6). Under SEC rules, for purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. § 78u-6(h)(1)), one is a whistleblower if:

> (i) You possess a reasonable belief that the
> information you are providing relates to a
> possible securities law violation (or, where
> applicable, to a possible violation of the
> provisions set forth in 18 U.S.C. §
> 1514A(a)) that has occurred, is ongoing, or
> is about to occur, and;
> (ii) You provide that information in a
> manner described in Section 21F(h)(1)(A) of
> the Exchange Act (15 U.S.C. § 78u-
> 6(h)(1)(A)).
> (iii) The anti-retaliation protections apply
> whether or not you satisfy the requirements,
> procedures and conditions to qualify for an
> award.

17 C.F.R. § 240.21F-2(b)(1).

The plaintiff contends that he believed there were 10(b) and 10b-5 violations by a syndicate of Credit Suisse and various HFT firms. He undertook a protected activity by writing and

publishing a report that explained these violations, and forwarded this report to the SEC. Two SEC staff members specifically requested this report. Soon afterwards the SEC initiated an investigation of these violations and it could be inferred that the plaintiff initiated and assisted in this SEC investigation. Therefore he qualifies as a whistleblower.

The plaintiff further alleges that his employer, RSI, had business connections with Jane St., an HFT firm that might have been implicated by his report, and that he suffered from retaliatory harassment and discharge as a result of his report. Therefore he claims to be entitled to statutory relief under 15 U.S.C. § 78u-6(h)(1)(C).

For purpose of the motion only, the RSI Defendants do not contest the factual allegations of retaliation. They move to dismiss on the grounds that the plaintiff did not report any securities law violation, and whatever he did report was not done in accordance with the Commission's reporting rule. Therefore they argue as a matter of law the plaintiff cannot be entitled to any whistleblower protection.

The RSI Defendants are mistaken. On their first point, although the plaintiff did say at one point in his complaint that "no securities laws were broken," he went on in the same sentence to allege that there were violations of section 10(b)

14

of the Securities Exchange Act and Rule 10b-5 promulgated thereunder. (FAC ¶ 5 at 2.)

The RSI Defendants argue that the plaintiff merely reported some conduct that exploited a regulatory loophole, but the plaintiff's pleadings are sufficient to allege that he provided information about possible violations of the securities laws. The Commission's Regulations provide that, for purpose of anti-retaliation protection, a whistleblower is one who possesses "a reasonable belief that the information [provided] relates to a possible securities law violation." 17 C.F.R. § 240.21F-2(b)(1)(i).

The regulations only require that a whistleblower have a reasonable belief that a violation of the securities laws has occurred. When it adopted this standard, the Commission explained: "The 'reasonable belief' standard requires that the employee hold a subjectively genuine belief that the information demonstrates a possible violation, and that this belief is one that a similarly situated employee might reasonably possess." Implementation of the Whistleblower Provisions of Section 21f of the Sec. Exch. Act of 1934, SEC Release No. 64545, 2011 WL 2045838, at 16 (May 25, 2011) (emphasis in original). The Commission cited Livingston v. Wyeth, Inc., 520 F.3d 344 (4th Cir. 2008), a case that interpreted the whistleblower protection in the Sarbanes-Oxley Act. See Livingston, 520 F.3d at 352

15

(Plaintiff "must show not only that he believed that the conduct constituted a violation, but also that a reasonable person in his position would have believed that the conduct constituted a violation."); see also Ott v. Fred Alger Mgmt. Inc., 11cv4418 (LAP), 2012 WL 4767200 at *6 (S.D.N.Y. Sep.27, 2012) (denying motion to dismiss Dodd-Frank whistleblower claim where the plaintiff "plausibly alleged that a similarly situated employee might reasonably possess a belief that the [reported activity] violated the securities laws.")

The plaintiff has sufficiently alleged for purposes of his complaint that he subjectively believed that there was a violation of Section 10(b) and Rule 10b-5 and that there was an objective basis for that belief based on a theory that Credit Suisse and others were involved in market manipulation that benefitted them to the disadvantage of those investors who were unaware of the alleged scheme. (FAC ¶ 19.) Section 10(b) prohibits not only material misstatements and omissions, but also manipulative acts. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007); see also Pagel, Inc. v. SEC, 803 F.2d 942, 946 (8th Cir. 1986). The plaintiff is not required to prove that a securities law violation had occurred, but only that he possessed a good faith reasonable belief that such a violation had occurred and he has crossed that threshold for purposes of the current motion.

For their second argument, the RSI Defendants contend that the plaintiff did not submit the information to the SEC in accordance with the methods of submission outlined in 17 C.F.R. § 240.21F-9(a), and therefore does not qualify as a whistleblower under the definition of 15 U.S.C. § 78u-6(a)(6), which requires the information related to a securities law violation to be submitted "in a manner established, by rule or regulation, by the Commission." The RSI Defendants argue that the manner established by the SEC for information submission is contained in 17 C.F.R. § 240.21F-9(a). That regulation provides for submission of information online through the Commission's website or on a Form TCR (Tip, Complaint, or Referral).

This argument has no merit. The SEC provided the manner in which information is to be provided in Rule 21F-9 for whistleblowers who sought to receive an award from the use of their information. In a recent release, the SEC explained that "an individual may qualify as a whistleblower for purposes of Section 21F's employment retaliation protections irrespective of whether he or she has adhered to the reporting procedures specified in Rule 21F-9(a). Rule 21F-2(b)(1) alone governs the procedures that an individual must follow to qualify as a whistleblower eligible for Section 21F's employment retaliation protections." <u>Interpretation of the SEC's Whistleblower Rules Under Section 21f of the Sec. Exch. Act of 1934</u>, SEC Release No.

17

75592, 2015 WL 4624264 (F.R.), at *3 (Aug. 4, 2015); see also
Berman v. Neo@Ogilvy LLC, No. 14-4626, 2015 WL 5254916, at *9
(2d Cir. Sept. 10, 2015) (applying the Commission's
interpretation of the definition of a whistleblower in 15 U.S.C.
§ 78u-6(a)(6)).

The statutory and regulatory scheme is clear and relatively
straightforward as it relates to the argument by the RSI
Defendants. Rule 240.21F-2(b) codifies protection for
whistleblowers against retaliation. As to the procedure for
providing information to the Commission, it refers back to 15
U.S.C. § 78u-6(h)(1)(A), which is the prohibition against
retaliation and that section does not contain any requirement
that any type of reporting be used. Moreover, Rule 240.21F-2(b)
states explicitly: "The anti-retaliation protections apply
whether or not you satisfy the requirements, procedures and
conditions to qualify for an award." The RSI Defendants attempt
to disqualify the plaintiff from coverage under the anti-
retaliation protections because he did not file a TCR form, but
that form is only required to obtain an award and is not
required to take advantage of the anti-retaliation protection.[4]

---

[4] The issue in Berman and Asadi v. G.E. Energy (U.S.A.), L.L.C.,
720 F.3d 620, 630 (5th Cir. 2013), on which the RSI Defendants
rely, was a different issue of statutory construction. The issue
was not whether a person reporting a possible securities law
violation to the Commission is required to use any particular
form to report in order to obtain the protection afforded a

The RSI Defendants' motion to dismiss the Dodd-Frank claim
is therefore denied.

### 2. Stored Communications Act

The SCA, 18 U.S.C. § 2701 et seq. provides in part:

> (a)    Offense.—Except    as    provided    in
> subsection (c) of this section whoever—
>    (1)    intentionally    accesses    without
>    authorization a facility through which an
>    electronic    communication    service    is
>    provided; or
>    (2) intentionally exceeds an authorization
>    to access that facility;
> and   thereby   obtains,   alters,   or   prevents
> authorized   access   to   a   wire   or   electronic
> communication   while   it   is   in   electronic
> storage   in   such   system   shall   be   punished   as
> provided   in   subsection (b) of this section.

18 U.S.C. § 2701. The plaintiff alleges that in October, 2012,

after he was terminated from RSI, he requested access from RSI

to his stored emails.[5] (FAC ¶ 54.) RSI sent the plaintiff those

---

whistleblower; Rule 240.21F-2(b) makes clear that no such form
is required. The issue was whether a person could be a
whistleblower by reporting a securities law violation in
accordance with the Sarbanes-Oxley Act within a company rather
than to the Commission, despite the fact that 15 U.S.C. § 78u-
6(a)(6) defines a whistleblower as an individual who provides
information "to the Commission in a manner established, by rule
or regulation, by the Commission." Contrary to the holding in
Asadi, the Court of Appeals for the Second Circuit deferred to
the Commission's Rule that found a whistleblower included a
person who made internal reports in accordance with the
Sarbanes-Oxley Act. See Rule 240.21F-2(b)(1); 15 U.S.C. § 78u-
6(h)(1)(A).

[5] As the plaintiff acknowledged at the oral argument of the
motions, the emails in question are emails sent and received in

emails several weeks later, "tampered with the contents," and
"locked" the attachments so they could not be accessed. The
plaintiff was able to access the attachments after he
"forensically analyzed" the emails. (Id.)

The plaintiff's claim fails because it does not allege,
other than in conclusory terms, that the defendants were without
authorization, or exceeded their authorization to access his
emails. Moreover, to the extent that the plaintiff is claiming
that the RSI Defendants tampered with his emails, he has failed
to allege a violation of the SCA.

The plaintiff alleges that RSI "tampered with" the contents
of the emails and locked the attachments before forwarding the
emails to the plaintiff after he was terminated. But these
actions are not proscribed by the SCA. 18 U.S.C. § 2701(a) only
prohibits a person from accessing a facility and altering the
"electronic communication while it is in electronic storage in
such system." "Electronic storage" is defined in 18 U.S.C.
§ 2510(17)(A)-(B) as "any temporary, intermediate storage of a
wire or electronic communication incidental to the electronic
transmission thereof" and "any storage of such communication by
an electronic communication service for purposes of backup
protection of such communication." Because communications

---

the plaintiff's work email account and stored on an RSI server
to which the plaintiff no longer has access.

downloaded to a user's computer terminal are neither stored on a temporary basis "incident to [their] electronic transmission" nor stored "by an electronic communication service for purposes of backup protection of such communication," the plaintiff's allegations that the RSI Defendants tampered with the emails after they were initially downloaded fails to state a claim. See Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz, 793 F. Supp. 2d 311, 337 (D.D.C. 2011).

It does not appear that the plaintiff is complaining about the access that the RSI Defendants exercised over his emails while he was employed at RSI. At the argument of the motions, he freely acknowledged that the computer and server belonged to RSI and that RSI had the right to the work product on the computer. It is also clear that RSI had the right to access his emails and to review them so that RSI had the right under the statute to access the emails. FINRA Rule 3110(b)(4) requires its members to review "incoming and outgoing written (including electronic) correspondence to properly identify and handle in accordance with firm procedures, customer complaints, instructions, funds and securities, and communications that are of a subject matter that require review under FINRA rules and federal securities laws [; and] internal communications to properly identify those communications that are of a subject matter that require review under FINRA rules and federal securities laws." FINRA Manual

Rule 3110, 2014 WL 3929606, at *2. There is no time limit on reviewing those communications. The plaintiff had no reasonable expectation of privacy in his work emails that are subject to the employer's review and RSI was authorized to access and obtain those emails. See Pure Power Boot Camp v. Warrior Fitness Boot Camp, 587 F. Supp. 2d 548, 559-60 (S.D.N.Y. 2008) (Report and Recommendation adopted by court) ("Courts have routinely found that employees have no reasonable expectation of privacy in their workplace computers, where [the employees are informed] that they will be monitored."); see also Shefts v. Petrakis, 758 F. Supp. 2d 620, 635 (C.D. Ill. 2010) (finding employer's access to employee's work emails authorized by its manual that states that emails received on company equipment were subject to monitoring).

Accordingly, the RSI Defendants' motion to dismiss the SCA count against the RSI Defendants is **granted**. The SCA claim is dismissed.


### 3. Americans with Disabilities Act

The RSI Defendants move to dismiss the claims for violations of the ADA. The only alleged basis for dismissal is the allegation that the plaintiff failed to exhaust his administrative remedies by filing a charge with the EEOC and obtaining a right-to-sue letter.

A timely filing of a charge with the EEOC is a prerequisite to any Title VII claim filed in federal district court. 42 U.S.C. § 2000e-5(e); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996). In New York State, the limitations period for filing such a charge is 300 days from the date of any act of discrimination or retaliation. See Borrero v. Am. Express Bank, Ltd., 533 F. Supp. 2d 429, 435 (S.D.N.Y. 2008). "[O]nly incidents that took place within the timely filing period are actionable." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). A federal lawsuit must be brought within 90 days of the receipt of a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1). Any claim made pursuant to the ADA has the same requirement and limitations period. 42 U.S.C. § 12117(a); see also Bennett v. Project Renewal, Inc., No. 14cv2063 (JGK), 2015 WL 1455693, at *2 (S.D.N.Y. Mar. 31, 2015).

An ADA plaintiff's failure to exhaust administrative remedies is an affirmative defense. A plaintiff is not required to plead or demonstrate exhaustion at the pleading stage. See DiPetto v. U.S. Postal Serv., 383 F. App'x. 102, 104 (2d Cir. 2010) (summary order).

While the filing of a timely charge of discrimination is a precondition to filing an ADA claims in federal court, the exhaustion of administrative remedies is not a jurisdictional prerequisite to suit. Zipes v. Trans World Airlines, Inc., 455

23

U.S. 385, 393 (1982). Thus, like a statute of limitations, the exhaustion requirement "is subject to waiver, estoppel and equitable tolling." Id.

The plaintiff makes no allegations regarding his administrative filing in the complaint. As a result, the complaint can only be said to be ambiguous about exhaustion. In response to the RSI Defendants' motion, the plaintiff claims that his decision not to file for administrative relief with the EEOC was due to a conversation with the EEOC. (Pl's Opp'n at 11.) The relevance of that conversation is unclear. It could be that the plaintiff is attempting to raise an argument of equitable estoppel, but that could not be determined on a motion to dismiss.

In the most recent document submitted by the plaintiff in support of his motion for a preliminary injunction, the plaintiff includes a document that suggests the plaintiff did file a charge with the EEOC and received a right-to-sue letter from the EEOC dated July 23, 2013. (ECF No. 155 at 15.) This suggests that the plaintiff was not dissuaded from filing a charge with the EEOC but that he failed to bring the current action within 90 days of receiving the right-to-sue letter. That would raise a statute of limitation defense that has not been raised thus far by the RSI Defendants.

The Court could not dismiss the ADA claims based on a failure to exhaust administrative remedies because that defense does not appear on the face of the complaint. However, as the Court explained to the plaintiff at the argument of the motions, the papers raise serious questions as to the timeliness of all of his ADA claims.

The motion by the RSI Defendants to dismiss the ADA claims against them is **denied**.

In his Fourth Amended Complaint, the plaintiff's only claims under the ADA were based on discrimination in employment in violation of Title I of the ADA.[6] In his responsive papers on the motions, the plaintiff attempted to assert claims under Title II relating to public services and Title III relating to public accommodations. A plaintiff cannot amend his complaint in response to a motion to dismiss. See, e.g., Bernstein v. City of New York, No. 06cv895 (RMB), 2007 WL 1573910, at *10 (S.D.N.Y. May 24, 2007) (finding in pro se case that "'[n]ew claims not specifically asserted in the complaint may not be considered by courts when deciding a motion to dismiss'" (quoting Lerner v. Forster, 240 F. Supp. 2d 233, 241 (E.D.N.Y. 2003) (alteration in

---

[6] In his third cause of action against RSI, the plaintiff cited 42 U.S.C. § 12112 which is the provision in Title I that prohibits discrimination against a "qualified person with a disability" by a "covered entity." (FAC ¶ 107 and corresponding claim for relief). The plaintiff also cited 29 C.F.R. § 16.30 which is the beginning of the regulations implementing Title I.

original)); see also Mathie v. Goord, 267 F. App'x. 13, 14 (2d. Cir. 2008) (summary order) (holding new claims presented in opposition to motion to dismiss could not be considered by district court). Therefore, these allegations are not part of the plaintiff's ADA claims.

Accordingly, the RSI Defendants' motion to dismiss the ADA claims is denied, but the ADA claims against the RSI Defendants are limited to those stated in the FAC.

### 4. 42 U.S.C. §§ 1985, 1986

Generously construed, the FAC attempts to assert a civil conspiracy claim under 42 U.S.C. § 1985(3) against the RSI Defendants, Jane St., and Integral, alleging that the defendants deprived the plaintiff of equal protection of the laws and of equal privileges and immunities under the law because of the defendants' animus towards persons perceived as mentally disabled.

"To state a conspiracy claim under 42 U.S.C. § 1985, plaintiff must allege (1) some racial or other class-based discriminatory animus underlying the defendants' actions, and (2) that the conspiracy was aimed at interfering with the plaintiff's protected rights." Porter v. Selsky, 287 F. Supp. 2d 180, 187 (W.D.N.Y. 2003), aff'd, 421 F.3d 141 (2d Cir. 2005). The RSI Defendants argue that this claim should be dismissed

because the plaintiff has failed to plead class-based animus and the interference with protected rights. As explained below, they are correct on both issues.

To state a claim under 1985(3), "the intended victims must be victims not because of any personal malice the conspirators have toward them, but because of their membership in or affiliation with a particular class." United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 850 (1983). Section 1985(3) does not reach conspiracies motivated by economic or commercial animus. Id. at 838.

The FAC fails to allege that whatever hardship the plaintiff suffered at RSI was due to his supposed class membership, in this case his being perceived as mentally disabled. In fact it pleads to the contrary. The essence of the complaint was that the plaintiff was the target of retaliation by his employer, because of his report to the SEC for securities law violations by an important business relation of his employer. That he was regarded as mentally disabled, according to the plaintiff, was precisely the result of the "gaslighting" campaign that was mounted against the plaintiff because he was a whistleblower. (FAC ¶ 3.) The Court of Appeals for the Second Circuit has expressly declined to extend § 1985(3) protections to whistleblowers as a protected class. See Tavoloni v. Mount

Sinai Med. Ctr., 198 F.3d 235, 1999 WL 972656, at *2 (2d Cir. Oct. 1, 1999) (summary order).

Moreover, the plaintiff affirmatively pleads that the reason for the mental abuse against him was to "prevent him from further reporting details related to the manipulation of futures-based [ETPs] and ETNs." (FAC ¶ 111.) That is a financial motivation rather than a class-based motivation. Conspiracies with financial or commercial motivation are not covered under section 1985(3). See United Bhd. of Carpenters, 463 U.S. at 838. Because the plaintiff has failed to allege any class based animus by the RSI Defendants and Jane St., he has failed to state a claim against the RSI Defendants and Jane St. for a violation of 1985(3).

Furthermore, the plaintiff has failed to identify any constitutional right that the alleged conspiracy sought to deny him. A deprivation of a constitutional right is a required object of a conspiracy under 1985(3). Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979). The plaintiff admits that he was not deprived of his First Amendment rights, notwithstanding his conflicting statements in his opposition papers. (FAC ¶ 111.) The plaintiff has failed to identify any other constitutional rights the deprivation of which was the object of the alleged conspiracy. (FAC ¶¶ 111-113.)

28

The plaintiff does allege that RSI conspired with Jane St. and perhaps Integral to interfere with his employment opportunities at other private employers, and to interfere with his security clearance to enter the floor of the NYSE. To the extent that these are intended to be allegations of violations of the plaintiff's right under the Fourteenth Amendment, the plaintiff has failed to state a claim. The Fourteenth Amendment is a protection against the denial of rights by state actors. See, e.g., Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982); Edmond v. Hartford Ins. Co., 27 F. App'x 51, 53 (2d Cir. 2001) (summary order) ("[A] claim under § 1985(3) for conspiracy to deny equal protection in violation of the Fourteenth Amendment is not actionable in the absence of state action"). It is not a protection against the failure of a private employer to offer employment. See Zaidi v. Amerada Hess Corp., 723 F. Supp. 2d 506, 518 (E.D.N.Y. 2010) (holding the Equal Protection Clause of the Fourteenth Amendment cannot provide a vehicle for an employment discrimination claim where the employer is a private entity). Nor is the NYSE a state actor when it exercises its non-regulatory functions, such as setting security clearance to its trading floors as in this case. See, e.g., United States v. Solomon, 509 F.2d 863, 871-72 (2d Cir. 1975); O'Callaghan v. New York Stock Exch., No. 11cv6331 (NRB), 2012 WL 3955968, at *4 (S.D.N.Y. Aug. 15, 2012).

29

To the extent that the plaintiff is alleging that he was deprived of employment and public accommodation rights because he was regarded as being mentally ill, that claim would be a statutory claim under the ADA that would not suffice for a 1985(3) claim. Cf. Novotny, 442 U.S. at 378 ("[Section] 1985(3) may not be invoked to redress violations of Title VII."); Medvey v. Oxford Health Plans, 313 F. Supp. 2d 94, 100 (D. Conn. 2004) (section 1985(3) cannot be used to enforce the ADA, among other statutes).

Because the plaintiff has failed to allege the class-based discriminatory animus or a violation of a protected constitutional right, his § 1985(3) claim must be dismissed. The plaintiff's failure to allege an actionable § 1985(3) claim dooms his claim under § 1986 because § 1986 creates a cause of action only for "neglect to prevent" conspiracies in violation of § 1985. Thus, where there is no valid claim under § 1985, there can be no valid claim under § 1986. See Amaker v. Goord, No. 98cv3634 (JGK), 1999 WL 511990, at *11 (S.D.N.Y. July 20, 1999) (collecting cases).

Accordingly, the plaintiff's § 1985(3) and § 1986 claims are dismissed.

30

5. New York Human Rights Law

The RSI Defendants only seek to dismiss the NYHRL claim on
the ground that the court should decline supplemental
jurisdiction in the event all federal claims against the RSI
Defendants are dismissed. (ECF No. 112 at 9-10.) Because the
Dodd-Frank Anti-Retaliation claim and the ADA claims survive,
the NYHRL claim survives as well. The RSI Defendants' motion to
dismiss the NYHRL claim is therefore **denied**.


B. Jane St.

The plaintiff alleges four claims against Jane St. for its
alleged violations of: 1) Title I of the ADA; 2) 42 U.S.C.
§1985(3); 3) 42 U.S.C. §1986; and 4) the NYHRL. For the reasons
explained below, Jane St.'s motion to dismiss these claims is
**granted**.

Jane St. moves to dismiss the § 1985(3) claim because the
plaintiff has failed to plead sufficient facts to show a
plausible claim of conspiracy, a class-based animus, or a
violation of a constitutional right as the object of the alleged
conspiracy. Jane St. is correct on each of these three issues.

The plaintiff's allegations of a conspiracy are conclusory.
Conclusory allegations are insufficient to plead a conspiracy.
"[A] complaint containing only conclusory, vague, or general
allegations of conspiracy to deprive a person of constitutional

31

rights cannot withstand a motion to dismiss." Gyadu v. Hartford
Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999) (per curiam). The
allegation regarding to the forming of this conspiracy is
limited to a purportedly "symbiotic" relation between Jane St.
and RSI and a meeting attended by two Jane St. traders and
several RSI employees. It is not alleged that the plaintiff was
a subject of the discussion at that meeting, and the supposed
wrongful conduct by the two Jane St. traders, namely making
damaging comments about the plaintiff to interfere with his
employment, happened one and a half years after the alleged
meeting. The conspiracy allegation is "vague and implausible,"
Kalderon v. Finkelstein, No. 08cv9440 (RJS), 2010 WL 3359473, at
*3 (S.D.N.Y. Aug. 25, 2010), aff'd, 495 F. App'x 103 (2d Cir.
2012) (summary order), and falls far short of providing "factual
basis supporting a meeting of the minds." See Romer v.
Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)
("[P]laintiff must also provide some details of time and place
and the alleged effects of the conspiracy." (internal citations
and quotations omitted))

    Moreover, as explained with respect to the RSI Defendants,
the plaintiff's failures to allege a class-based animus and a
violation of a constitutional right are fatal to his claims, and
the claims must therefore be dismissed. Because the § 1985(3)
claim is dismissed, the § 1986 claim is also dismissed for the

same reason as explained with regard to the RSI Defendants'
motion.

Jane St. also moves to dismiss the ADA claim and the NYHRL
claim on the ground, among others, that the plaintiff does not
and cannot allege that Jane St. was his employer. Title I of the
ADA only applies to discrimination by a "covered entity." See 42
U.S.C. § 12112(a) ("No covered entity shall discriminate against
a qualified individual on the basis of disability in regard to
job application procedures, the hiring, advancement, or
discharge of employees, employee compensation, job training, and
other terms, conditions, and privileges of employment.") "The
term 'covered entity' means an employer, employment agency,
labor organization, or joint labor-management committee." 42
U.S.C. § 12111(2). Jane St. did not employ or consider employing
the plaintiff at any point, and the plaintiff does not allege
any other reason why Jane St. is a covered entity under Title I
of the ADA.[7] Therefore the plaintiff cannot assert a claim under

---

[7] In his FAC at ¶ 109 and the corresponding claim for relief, the
plaintiff cites 42 U.S.C. § 12102(2)(c) in his ADA claims
against Jane St. and Integral. This appears to be a mis-cite for
§ 12102(1)(c) which defines disabilities to include "being
regarded as having such an impairment . . . ." But it is not a
reference to a liability section under Title I, II or III of the
ADA. The plaintiff also cites 29 C.F.R. § 1630.14 which relates
to medical examination by covered entities. That section is
contained in the regulation relating to Title I. See 29 C.F.R.
§ 1630.1(a).

Title I of the ADA against Jane St. His ADA claim against Jane
St. is dismissed.

In his opposition papers, the plaintiff attempts to assert
Title II and Title III claims against Jane St. As explained
earlier with regard to similar claims asserted against the RSI
Defendants, because these claims were not asserted in the FAC,
and this case has been proceeding for more than a year during
which time four amendments to the complaint have been filed by
the plaintiff, these claims are not properly pleaded.

The NYHRL's provisions protecting people with disabilities
in the employment context also limit their scope to the
discriminatory practice of a small group of covered entities.
N.Y. Exec. Law § 296(1) (proscribing unlawful discriminatory
practice by an employer, labor organization, employment agency
or any joint labor-management committee controlling apprentice
training programs). The plaintiff has failed to allege why Jane
St. would fall within the scope of the NYHRL's prohibitions.

The only section of the NYHRL that the plaintiff cites in
support of his claims is N.Y. Exec. L. § 292(21)(c). (FAC
¶ 108.) That is a definitional section that includes within
disability "a condition regarded by others as such an impairment
. . . ." In opposition to the motion to dismiss, the plaintiff
attempts to argue that Jane St. is a place of public
accommodation that would be covered by N.Y. Exec. L. § 296(2).

34

This is a claim that was not raised in the FAC. Jane St. disputes that it would be covered by that section and the Court could not deny the current motion to dismiss based on a new claim raised for the first time in opposition to the motion.

If the Court is inclined to dismiss this claim, the plaintiff asks the Court to transfer the claim to a New York State court pursuant to 28 U.S.C. § 1631. But that section relates to a transfer to another federal court, not to a state court. See, e.g., Giusti v. Morgan Stanley Smith Barney, LLC, 581 F. App'x 34, 35 (2d Cir. 2014) (summary order); Escoffier v. MFY Legal Servs., No. 13cv80898 (LGS), 2015 WL 221048, at *2 (S.D.N.Y. Jan. 15, 2015).

The Court will dismiss the NYHRL claim without prejudice and decline to exercise supplemental jurisdiction because all of the federal claims against Jane St. have been dismissed. See 28 U.S.C. § 1367(c).[8]

---

[8] At the argument of the current motions, the plaintiff expressed his concerns over the statute of limitations for his state law claims and communicated his desire to pursue those claims in a proper state tribunal. When a state law claim first asserted under supplemental jurisdiction is subsequently dismissed by the court, section 1367(d) provides that, "[t]he period of limitations for any claim asserted under subsection (a) [shall be tolled] for a period of 30 days after it is dismissed . . . ." 28 U.S.C. § 1367(d). The Second Circuit Court of Appeals has explained that "[s]ection 1367(d) ensures that the plaintiff whose supplemental state claim is dismissed has at least thirty days after dismissal to refile in state court." Seabrook v. Jacobson, 153 F.3d 70, 72 (2d Cir. 1998) (emphasis added); see

C. Integral

The plaintiff alleges four claims against Integral,
specifying violations of: 1) Title I of the ADA; 2) 42 U.S.C. §
1985(3); 3) 42 U.S.C. § 1986; and 4) the NYHRL. Integral's
motion to dismiss these claims is **granted**.

Integral moves to dismiss the ADA claim and the NYHRL claim
on the ground that, among other things, it was not an employer
or a prospective employer of the plaintiff. The plaintiff has
failed to allege any reason why Integral is a covered entity
under Title I of the ADA or the NYHRL anti-discrimination
provisions in the employment context. Similar to his claims
against Jane St., the plaintiff's ADA and NYHRL claims against
Integral are therefore dismissed, although the NYHRL claim is
dismissed without prejudice.

Integral also moves to dismiss the §§ 1985 and 1986 claims.
It is plain that the plaintiff has failed to plead a plausible
claim of conspiracy, because he has pleaded no facts that
suggest a meeting of the minds. The plaintiff only proffers the
vague and conclusory statement that Integral has a "symbiotic"
relationship with RSI. (FAC ¶¶ 12, 112.) Not a single meeting or
communication between Integral and any other accused conspirator
is alleged. The complaint clearly falls short of the pleading

---

also Vincent v. The Money Store, 915 F. Supp. 2d 553, 559-60
(S.D.N.Y. 2013)

required for a conspiracy. See Romer, 119 F. Supp. 2d at 363
("[P]laintiff must provide some details of time and place and
the alleged effects of the conspiracy." (internal quotation
marks omitted)).

Integral is also correct that the § 1985(3) claim against
Integral should be dismissed because the plaintiff has failed to
allege a class-based animus. Indeed, the plaintiff admits that
he is "fairly positive that [Integral] was financially
motivated" in committing the alleged wrongful conduct. (FAC
¶ 112) Conspiracies with financial or commercial motivation are
not within the scope of § 1985(3). See United Bhd. of Carpenters
463 U.S. at 838.

Accordingly, the plaintiff's § 1985(3) claim against
Integral is dismissed. Because the § 1985 claim fails, the §
1986 claim also fails. See Amaker, 1999 WL 511990, at *11. All
claims against Integral are therefore dismissed, although the
NYHRL claim is dismissed without prejudice.


### D. Dr. Henricks

The plaintiff asserts two claims against Dr. Henricks,
alleging she violated: 1) 42 U.S.C. § 1986; and 2) N.Y.C.P.L.R.
214-a.[9]

---

[9] The plaintiff cites N.Y.C.P.L.R. §214-a in his FAC. (FAC
¶ 114.) That is the statute of limitation section for medical,

As discussed above, the plaintiff has failed to state a
§ 1985(3) claim against any of the defendants. Therefore there
cannot be a §1986 claim. <u>See</u> <u>Amaker</u>, 1999 WL 511990, at *11. The
§ 1986 claim against Dr. Henricks is therefore dismissed.

Having disposed of the plaintiff's only claim under federal
law, the Court declines to exercise supplemental jurisdiction
over the sole surviving state law claim against Dr. Henricks.
The exercise by a district court of supplemental jurisdiction
over state law claims is governed by 28 U.S.C. § 1367, which
provides in relevant part that:

> (c)  The  district  courts  may  decline  to
> exercise  supplemental  jurisdiction  over  a
> claim under subsection (a) if—
>    (1)  the  claim  raises  a  novel  or  complex
>    issue of State law[, or]
>    (3)  the  district  court  has  dismissed  all
>    claims  over  which  it  has  original
>    jurisdiction . . . .

28 U.S.C. § 1367(c). The "decision whether to exercise
[supplemental] jurisdiction after dismissing every claim over
which [a court] had original jurisdiction is purely
discretionary." <u>Carlsbad Tech., Inc. v. HIF Bio, Inc.</u>, 556 U.S.
635, 639 (2009); <u>see</u> <u>Delaney v. Bank of Am. Corp.</u>, 766 F.3d 163,
170 (2d Cir. 2014) (per curiam).

---

dental, or pediatric malpractice. It is plain that the plaintiff
is attempting to assert a claim for medical malpractice.

All federal claims against Dr. Henricks have been
dismissed.[10] Moreover, state courts have particular expertise in
medical malpractice cases. See Flemming v. Velardi, No. 02cv4113
(AKH), 2003 WL 21756108, at *3 (S.D.N.Y. July 30, 2003)
(declining to exercise supplemental jurisdiction on the
plaintiff's medical malpractice claim). The case is still at a
relatively early stage of litigation and there would be no
benefit to judicial economy should the Court exercise
discretionary jurisdiction over the plaintiff's state law
malpractice claim. See Loren v. N.Y.C. Dep't of Educ., No.
13cv7597 (VEC), 2015 WL 3917490, at *9 (S.D.N.Y. June 25, 2015)
(declining to exercise supplemental jurisdiction considering no
discovery had been conducted and no evaluation of the state law
claims had been made). Accordingly the Court declines to
exercise supplemental jurisdiction and the plaintiff's medical
malpractice claim against Dr. Henricks under state law is
dismissed without prejudice. See also In re Beacon Assocs.
Litig., 745 F. Supp. 2d 386, 435-36 (S.D.N.Y. 2010) (Sand, J.)
(declining to exercise supplemental jurisdiction over state law

---

[10] The plaintiff, in his opposition papers, attempts to include
Dr. Henricks as a defendant for the § 1985(3) conspiracy. (Pl's
Opp'n at 42.) Because the plaintiff does not seek relief from
Dr. Henricks under that claim in his FAC, the claim cannot be
considered. Even if the FAC is broadly construed to have raised
that claim, it still fails for the same reasons of failure to
plead facts supporting a conspiracy, and to plead a class-based
animus and a violation of a constitutional right as the object
of the alleged conspiracy.

claims against one defendant while federal claims remain as to other defendants); <u>Stewart v. John Dempsey Hosp.</u>, No. 303cv1703 (WWE), 2004 WL 78145, at *4 (D. Conn. Jan. 9, 2004) (same).


E. Leave to Amend

The defendants urge the Court to dismiss the FAC against them with prejudice and without leave to amend. The plaintiff had asked for a conference to file yet another amended complaint.

The plaintiff's request for a conference for permission to file another amended complaint is **denied as moot**. At the argument of the current motions the Court discussed with the plaintiff the plaintiff's desire to file a fifth amended complaint. The Court explained that the request was abusive at this point because it would moot and render wasteful all the motions directed against the Fourth Amended Complaint. The Court also urged the plaintiff to wait for the Court's decision on current motions.

As a result of the current motions, it is clear that the plaintiff should not be permitted to file an amended complaint in this Court against Jane St., Integral, and Dr. Henricks. Four bites at the apple are more than sufficient. <u>Weinstein v. Appelbaum</u>, 193 F. Supp. 2d 774, 782 (S.D.N.Y. 2002); <u>see also</u> <u>Armstrong v. McAlpin</u>, 699 F.2d 79, 93–94 (2d Cir. 1983); <u>DeJesus</u>

40

v. Sears Roebuck & Co., Inc., 87 F.3d 65, 72 (2d Cir. 1996). As to RSI, the case remains pending in this Court. If the plaintiff still seeks to file an amended complaint, the plaintiff should file an appropriate motion.

### IV. Plaintiff's Post-Complaint Motions

On May 11, 2015, the plaintiff moved to strike parts of the RSI Defendants' memorandum of law in support of the motion to dismiss the FAC, on the ground that the defendants' motion "fraudulently misrepresent[ed] crucial elements of the compliant." (ECF No. 118 at 2.)

Fed. R. Civ. P. 12(f) provides: "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are not to be freely granted, and no deletions will be made unless it is clear that the allegations are without [basis]." Laub v. Genway Corp., 60 F.R.D. 462, 465-66 (S.D.N.Y. 1973) (citations and quotations omitted). Moreover, the movant should show that he will be prejudiced if the attacked allegations are left in the pleadings. Allstate Ins. Co. v. Home Ins. Co., No. 97cv4322 (HB), 1997 WL 639254, at *1 (S.D.N.Y. Oct. 15, 1997).

The RSI Defendants are correct that Rule 12(f) applies only to pleadings. "[A] motion to dismiss is not a pleading, and

therefore not subject to a Rule 12(f) motion to strike."
Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp., No. 14cv0048
(AJN), 2015 WL 3999192, at *5 (S.D.N.Y. June 29, 2015)
(collecting cases). Therefore the motion should be denied on
this ground alone.

Moreover, the plaintiff has failed to show how he is
prejudiced by the defendants' allegations. The plaintiff plainly
was able to respond to the motion and answer any of the
statements with which he disagreed, so as to cure any confusion
that could be effected by the alleged misstatements. To the
extent there are disputes as to whether the redactions are
proper, the parties should continue to resolve their differences
before the Magistrate Judge who supervised the other redaction
disputes in this case. **The motion is denied.**

On May, 22, 2015, the plaintiff made a motion for partial
summary judgement. (ECF No. 124.) He later requested in a letter
dated June 9, 2015 to withdraw this motion. (ECF No. 130.) In a
letter dated June 11, 2015 the plaintiff reconfirmed his request
to withdraw his motion for partial summary judgment. (ECF No.
131.) Because the plaintiff has so requested, **the motion for
partial summary judgement is denied without prejudice**.

In the same letter dated June 11, 2015 (ECF No. 131), the
plaintiff requested the Court to treat his Reply (ECF No. 133),
also filed on June 11, 2015, as a Motion for Partial Judgment on

42

the Pleadings. Considered as such, the motion is plainly premature because the defendants have not filed their answers. Grodzian v. Computer Credit, Inc., No. 08cv2286 (JS)(WDW), 2009 WL 6497843, at *2 (E.D.N.Y. Mar. 31, 2009) ("Plaintiff's motion for a judgment on the pleadings is premature because Defendant has not filed an Answer, and thus the pleadings are not closed.") **The motion for partial judgement on the pleadings is therefore denied without prejudice.**

On June 18, 2015, the plaintiff filed a motion to strike various affirmative defenses by Dr. Henricks. (ECF No. 134.) Because all claims against Dr. Henricks are already dismissed, **this motion is denied as moot.**

## V. Preliminary Injunction

### A.

On September 8, 2015, the plaintiff filed an unsigned order to show cause for preliminary injunction and temporary restraining order, seeking to enjoin several defendants 1) to "economically reinstate" the plaintiff at RSI with full benefits but for the alleged retaliation, 2) to retract false and defaming statements about the plaintiff to officers of the NYSE, 3) to retract false and defaming statements made to several government authorities, 4) to be permanently restrained from making the aforementioned false and defaming statements to

43

potential witnesses and individuals employed in the securities
industry, and 5) to cease and desist from retaliating,
misleading, or deceiving, and otherwise deterring employees from
testifying on the plaintiff's behalf. (ECF No. 138.) Pursuant to
the Court's order (ECF No. 144), the RSI Defendants filed an
opposition brief on September 18, 2015 (ECF No. 151.) The
plaintiff filed reply papers on September 30, 2015 (ECF No.
156.)

      As a preliminary matter, given the Court's ruling on the
relevant motions to dismiss, the plaintiff has no likelihood of
prevailing in this case on the claims against Dr. Henricks, and
any application against Dr. Henricks must therefore be denied.
For the same reason, the plaintiff's claims against the RSI
Defendants are limited to those arising under the Dodd-Frank
statute, Title I of the ADA, and the NYHRL.[11]

---

[11] Preliminary injunctive relief is designed "to preserve the
status quo and prevent irreparable harm until the court has an
opportunity to rule on the lawsuit's merits." Devose v.
Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam).
"Thus, a party moving for a preliminary injunction must
necessarily establish a relationship between the injury claimed
in the party's motion and the conduct asserted in the
complaint." Id. (citing Penn v. San Juan Hosp., Inc., 528 F.2d
1181, 1185 (10th Cir. 1975)).
      The alleged wrongdoing underlying the plaintiff's surviving
claims deals only with events during his employment at and his
eventual termination by RSI. Claims involving his post-RSI
experiences are dismissed. The plaintiff seeks to enjoin the
relevant RSI Defendants to retract statements made to the NYSE
and several government authorities. These statements appear to
have nothing to do with the plaintiff's employment at RSI but

B.

Whether to grant or deny a preliminary injunction lies within the sound discretion of the district court. S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 237 (2d Cir. 2001). The standards that govern the issuance of a preliminary injunction are well established. Ordinarily, a party seeking a preliminary injunction must show: "(a) that it will likely suffer irreparable harm in the absence of the injunction[;] and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 33-34 (2d Cir. 1995). Where the plaintiff seeks a mandatory injunction—one that "alter[s] the status quo by commanding some positive act"—an even higher standard applies. Id. at 33-34. Namely, the plaintiff must make a "clear" or "substantial" showing of likelihood of success on the merits or show that "extreme or very serious damage" would result in the absence of preliminary relief. Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996); Tom Doherty, 60 F.3d at 33-34; Cherry River Music Co. v. Simitar

---

only with alleged actions after being terminated by RSI. Therefore the two applications for injunctions to retract statements may be denied on this ground alone.

Entm't Inc., 38 F. Supp. 2d 310, 316 (S.D.N.Y. 1999); see also
Rush v. Fischer, No. 09cv9918 (JGK), 2011 WL 6747392, at *1-2
(S.D.N.Y. Dec. 23, 2011).

Because the plaintiff is proceeding pro se, his submissions
must be "read liberally and should be interpreted 'to raise the
strongest arguments that they suggest.'" Graham v. Henderson, 89
F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d
787, 790 (2d Cir. 1994)); see also Rush, 2011 WL 6747392, at *1-
2.

In this case, the plaintiff seeks an injunction to
"economically reinstate" him, which is essentially a request for
money damages, and to order the several defendants to retract
statements they previously made. The relief sought by the
plaintiff alters the status quo and is properly characterized as
a mandatory rather than a prohibitory injunction. Accordingly,
the plaintiff must meet the more stringent standard, although
the plaintiff has failed to meet even the most basic
requirements to warrant a preliminary injunction.

C.

The plaintiff has made neither a showing of a clear and
substantial likelihood of success on the merits, nor a showing
of extreme and very serious harm that is irreparable. Therefore

the plaintiff's application for preliminary injunctions is
denied.

      1. Clear and Substantial Likelihood of Success

    The Plaintiff has failed to make a clear and substantial
showing of his likelihood of success on any of his claims.

    With regard to the plaintiff's ADA claim, his own
admissions indicate that the claim is likely time-barred because
he failed to bring his federal complaint within 90 days of
receiving a right-to-sue letter from the EEOC. With regard to
both his ADA and NYHRL claims, the plaintiff has failed thus far
to show that he is likely to succeed on the merits of the claims
because it is apparent that the RSI defendants have substantial
arguments that the plaintiff was dismissed based on his
performance and conduct and not because of any perceived
disabilities. Indeed, the plaintiff argues that the whole
alleged campaign against the plaintiff was to discredit him by
making him appear to be mentally unstable. The plaintiff has not
shown that his discrimination claims are likely to succeed.
Indeed the plaintiff himself "[suspects his] civil claims will
be dismissed" and "intend[s] to hire an attorney and bring a
complaint to state court if necessary." (ECF No. 138 at 10.)
Therefore by his own admission the plaintiff believes he has
limited likelihood of success on his claims. And at the argument

of the current motions the plaintiff explained that he had
probably brought the wrong motion.

The plaintiff has failed to show a likelihood of success,
much less a clear and substantial likelihood of success on his
claim of Dodd-Frank whistleblower protection. The success of
this claim will depend upon, among other things, proof that the
plaintiff had a reasonable and objective belief that a violation
of the securities law had occurred and that he was discharged or
harassed because he reported that information to the SEC. See 15
U.S.C. § 78u-6(h)(1), 17 C.F.R. § 240.21F-2(b).

The plaintiff has failed to come forward with evidentiary
support to show that he was harassed or discharged for that
reason. See Ivy Mar Co. v. C.R. Seasons Ltd., 907 F. Supp. 547,
561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are
insufficient for the issuance of a preliminary injunction.");
Hancock v. Essential Res., Inc., 792 F. Supp. 924, 928 (S.D.N.Y.
1992) ("Preliminary injunctive relief cannot rest on mere
hypotheticals."). The RSI Defendants, through an affidavit by
Rosenblatt, directly dispute any connection between the
plaintiff's termination and his report to the SEC, and explain
the termination as a result of the plaintiff's unprofessional
behavior towards Kemmsies. (ECF No. 150 at 2.) They further deny
any interference with the plaintiff's employment. (Id.) They
also point out that the plaintiff has failed to identify a

single defaming statement supposedly made by any of the RSI Defendants to the government authorities. These factual disputes preclude the issuance of a preliminary injunction at this time. See R.R. P.B.A. of State of N.Y., Inc. v. Metro-N. Commuter R.R., 699 F. Supp. 40, 43 (S.D.N.Y. 1988) ("[A] substantial dispute as to the facts may furnish a strong reason to deny relief.")

2.

The plaintiff has also failed to show any irreparable harm. Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (citations and quotations omitted). Irreparable harm is defined as "certain and imminent harm for which a monetary award does not adequately compensate." Wisdom Import Sales Co., LLC v. Labatt Brewing Co., Ltd., 339 F.3d 101, 113 (2d Cir. 2003). The plaintiff must establish that absent a preliminary injunction it "will suffer an injury that is neither remote nor speculative, but actual and imminent." Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66, (2d Cir. 2007) (internal quotation marks omitted); see also Ben Hur Moving & Storage, Inc. v. Better Bus. Bureau of Metro. New York, Inc., No. 08cv6572 (JGK), 2008 WL 4702458, at *6 (S.D.N.Y. Oct. 3, 2008). "[M]oney damages

may not form the basis of a claim of irreparable harm necessary to support a preliminary injunction." 5124 Drug Corp. v. Human Res. Admin. of City of N.Y., 539 F. Supp. 1113, 1114-15 (S.D.N.Y. 1982).

The plaintiff has failed to show he would suffer such an imminent harm if the preliminary injunction were not granted. As an initial matter, delays in seeking relief undercut an argument that the plaintiff will suffer irreparable harm. Tough Traveler, Ltd. v. Outbound Products, 60 F.3d 964, 968 (2d Cir. 1995). "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiff['s] rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985).

The plaintiff was terminated in October 2012. He filed the case in June 2014, one and a half years after he was terminated. The preliminary injunction was brought on September 8, 2015, almost three years after he parted with RSI and more than one year after the case was initiated. A delay of this magnitude substantially undermines a claim of irreparable injury. See Majorica, S.A. v. R.H. Macy & Co., 762 F.2d 7, 8 (2d Cir. 1985) (seven months' delay from the commencement of litigation to the filing for preliminary injunction may be sufficiently

significant to preclude the granting of preliminary injunctive relief).

While an ongoing violation of constitutional rights may support a claim of irreparable injury, the plaintiff has failed to plead any plausible violation of his constitutional rights. The current motion basically argues that the plaintiff is in need of funds. But the requisite irreparable harm is not established by financial distress or inability to find other employment, unless truly extraordinary circumstances are shown. See Sampson v. Murray, 415 U.S. 61, 91 (1974).

Extraordinary circumstance may exist where the plaintiff has shown that he was the victim of retaliation and that retaliation has prevented him from obtaining additional employment. See Holt v. Continental Group, Inc., 708 F.2d 87, 91 (2d Cir. 1983). In this case the plaintiff has failed to make an evidentiary showing that he was the victim of retaliation and the RSI Defendants have in turn submitted documents in support of their claim that the plaintiff abused Kemmsies and subsequently threatened Wishnow. Moreover, the plaintiff concedes that he does get some other employment. (ECF No. 138 at 13.)

Finally, the plaintiff applies to enjoin the RSI Defendants from witness intimidation. It is true that an alleged retaliatory discharge "carries with it the distinct risk that

other employees may be deterred from . . . providing testimony for the plaintiff in [the plaintiff's] effort to protect [the plaintiff's] own rights. These risks may be found to constitute irreparable injury." Id. However, there is no presumption of irreparable injury in such cases; rather the Second Circuit Court of Appeals has adopted a "case-by-case approach to requests for preliminary relief based on witness intimidation." Moore v. Consol. Edison Co. of N.Y., 409 F.3d 506, 512 (2d Cir. 2005). A preliminary injunction is appropriate when "immediate relief [is] the only form of relief that could mitigate the alleged harm of witness intimidation in the ongoing proceedings." Id. (emphasis in the original); see also Mullins v. City of N.Y., 634 F. Supp. 2d 373, 387 (S.D.N.Y. 2009), aff'd, 626 F.3d 47 (2d Cir. 2010). The plaintiff has not offered any evidence of witness intimidation, such as a threat of discharge or even negative performance reviews for testifying in this case. That the defendants ask their employees not to discuss a pending litigation can only be described as a reasonable precaution. No notice of deposition or subpoena has been filed, and the plaintiff would have opportunities to receive the information through the discovery process. Accordingly, because there is no evidence that the defendants have intimidated any witness from participating in litigation, the plaintiff has failed to show irreparable harm in this

regard. See also Moore, 409 F.3d at 508. Because the plaintiff has failed to make a clear and substantial showing of likelihood of success, and because he has failed to show that irreparable harm would result in the absence of preliminary relief, the application for a preliminary injunction is **denied**.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the foregoing reasons, the motions to dismiss by Jane St (ECF No. 105), Integral (ECF No. 108), and Dr. Henricks (ECF No. 113) are **granted**. The plaintiff's claims against these defendants are **dismissed**, except that the claim for medical malpractice against Dr. Henricks, and the NYHRL claims against Jane St. and Integral are **dismissed without prejudice** because the Court has declined to exercise supplemental jurisdiction over those claims. Pursuant to Fed. R. Civ P. 54(b), there is no just reason for delay in entering a final judgment dismissing the claims against Jane St., Integral, and Dr. Henricks, and a final judgment will be entered accordingly.

The RSI Defendants' motion to dismiss is **granted in part and denied in part**. The motion by the RSI Defendants to dismiss the Dodd-Frank claim, the claim under Title I of the ADA, and

the claim under NYHRL against the RSI Defendants is **denied**. The remaining claims against the RSI Defendants are dismissed.

All pending motions by the plaintiff (ECF No. 118, 124, 133, 134, 135) are **denied**. The plaintiff's application for a preliminary injunction is **denied**. The foregoing constitutes the Court's findings of facts and conclusions of law pursuant to Fed. R. Civ. P. 52 (a)(2).

The Clerk is directed to close all pending motions, and to enter a judgment pursuant to Fed. R. Civ. P. 54(b) dismissing the claims against Jane St., Integral, and Dr. Henricks as explained above.

**SO ORDERED.**

Dated:    New York, New York
          October 7, 2015              _____/s/_____

                                            **John G. Koeltl**
                                   **United States District Judge**